**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Nicole Mekosch,                                                        Civil No. 05-594 (DWF/AJB)

          Plaintiff,

v.                                                                                            **ORDER**

Jo Anne Barnhart, Commissioner
of Social Security Administration,

          Defendant.

---

Ethel J. Schaen, Esq., Schaen Law Office; and Thomas A. Krause, Esq., Thomas A. Krause, PC, counsel for Plaintiff.

Lonnie F. Bryan, Assistant United States Attorney, United States Attorney's Office, counsel for Defendant.

---

## INTRODUCTION

This matter is before the undersigned United States District Judge pursuant to Plaintiff Nicole Mekosch's ("Plaintiff") objections to the April 12, 2006 Report and Recommendation ("R&R") (Doc. No. 24) of Magistrate Judge Arthur J. Boylan. The R&R recommended that Plaintiff's Motion for Summary Judgment (Doc. No. 15) be denied and that Jo Anne Barnhart, Commissioner of Social Security ("Commissioner") Motion for Summary Judgment (Doc. No. 19) be granted. For the reasons set forth below, the R&R is adopted. The factual background for this matter is clearly and precisely set forth in the R&R and is incorporated by reference for the purpose of Plaintiff's objections.

# DISCUSSION

## I.      Standard of Review

A district court must make an independent, *de novo* evaluation of those portions of an R&R to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  *See* U.S.C. § 636(b)(1)(C); D. Minn. L.R. 72.1(c)(2).

When reviewing a denial of benefits, the Commissioner's final decision must be upheld if it is supported by substantial evidence on the record as a whole.  *See* 42 U.S.C. § 405(g); *see also Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *Whitehouse v. Sullivan*, 949 F.2d 1005, 1006 (8th Cir. 1991).  Substantial evidence is that which a reasonable mind might accept as adequate to support the Commissioner's conclusion.  *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

In assessing the substantiality of the evidence, a court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); *see also Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993); *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992); *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984).  This standard "allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Commissioner may decide to grant or deny benefits without being subject to reversal on appeal."  *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991) (citing *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)).

A court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker*, 730 F.2d at 1150. Rather, if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, then the Commissioner's decision must be affirmed. *See Young*, 221 F.3d at 1068 (citing *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)).

## II.     Plaintiff's Objections

Plaintiff raises essentially two objections to the Magistrate Judge's recommendation that the Administrative Law Judges's ("ALJ") decision be upheld, namely that the ALJ: (1) erred in his rejection of the opinions of the treating specialists (Dr. Leavell) and the treating physician (Dr. Sahlberg) regarding the Plaintiff's inability to sustain work due to unscheduled naps; and (2) failed to make a comprehensive, individualized assessment of Plaintiff's residential functional capacity and, as a result, the vocational expert's testimony cannot constitute substantial evidence in support of the ALJ's decision.

### a.     ALJ's rejection of the opinions of Dr. Leavell and Dr. Sahlberg

Plaintiff argues that the ALJ failed to identify any specific reason for disregarding the opinions of her treating physicians, Drs. Leavell and Sahlberg, that she needed to nap for several hours a day. Admittedly, "[t]he regulations provide that a treating physician's opinion regarding an applicant's impairment will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence in the record.'"  *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)).  As pointed out by Magistrate Judge Boylan, a physician's opinion is not automatically controlling since it must be evaluated with the record as a whole and may be discounted if it is internally inconsistent or inconsistent with the record as a whole.  *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005); *Bentley v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995).

It is true that Dr. Sahlberg noted a need for naps in his assessment of Plaintiff's physical limitations.  However, this limitation was nowhere to be found in his treatment notes.  Moreover, the need for naps is never explained in the doctor's assessment.  It is never made clear in the record by Dr. Sahlberg whether the limitation is based on his own observations or on statements made by Plaintiff.  It must be observed that Dr. Sahlberg did not treat Plaintiff for her narcolepsy.  Thus, he was not in a position to give any opinions regarding Plaintiff's functional capacity with respect to her narcolepsy.

The ALJ also acknowledged Dr. Leavell's assessment indicating a need for "two to three breaks at unpredictable intervals during the day."  (T. 26).  However, it is observed by the ALJ, that this limitation was assessed at a time when Plaintiff was not taking her narcolepsy medication.  The ALJ gave great weight to Dr. Leavell's opinion that Plaintiff's impairment would last 12 months, if she were off her medications.  Further, the ALJ appropriately noted that Plaintiff's activities of daily living as reported by her and her husband did not support the severity of symptoms as stated by Dr. Moellentine.

The Court concurs in the observation of Magistrate Judge Boylan that there is substantial evidence in the record to support the ALJ's determination that Plaintiff's failure to take narcolepsy medication indicates that her impairments from the narcolepsy were not disabling. Close scrutiny of the record suggests that Plaintiff's narcolepsy was not so severe as to be disabling. Plaintiff's major complaints and reasons she was seen by her treating physicians during the alleged disability period were mainly for sinus and urinary tract infections, allergies, headaches, and muscle and back pain. Prior to her disability date, Plaintiff also presented at her clinic with complaints of sinusitis, allergies, urinary infections, and muscle, head, and neck pain. Plaintiff sought treatment for narcolepsy much less frequently than for her other conditions. The record suggests a correlation between the exacerbation of her narcolepsy and being off her medication. Also, during this time, she continued to drive intermittently. In addition, Plaintiff testified that she never left her five-year-old and infant unattended during the day, but she would try to nap when they did, which was inconsistent with the limitation imposed by Dr. Sahlberg of having to take unannounced, unpredictable rests period of two to three hours daily.

Moreover, Dr. Leavell's opinions were rendered when Plaintiff was pregnant and not taking Provigil for her narcolepsy condition. The record suggests to the Court that when she was taking Provigil, she was doing well and never reported a need to take naps to Dr. Leavell.

Of course, the Court must necessarily observe that during this entire period Plaintiff was raising five daughters with her husband and taking care of her five-year-old and five-

month-old daughters by herself when her husband was working. During this time, the record suggests that Plaintiff was not taking Provigil. There are few jobs in our society that are more challenging and demanding than raising five children–especially given the ages of Plaintiff's children. While the Court can certainly observe a job well done by the Plaintiff, that is inconsistent and quite contrary to the existence of a disability.

Consequently, based upon the Court's scrutiny of the entire record in this case, the Court concludes that the ALJ reasonably concluded that Plaintiff's allegations of the severity of her symptoms of narcolepsy, including the need to take several naps a day, were inconsistent with her failure to resume a highly effective course of treatment and not consistent with other evidence in the record. Sufficient cause existed for the ALJ to discount the treating physicians' opinions that Plaintiff was limited by needing two or three unscheduled breaks during the day or that she needed rest periods of two to three hours daily at unannounced or unpredictable times. For these reasons, the Court overrules this objection of the Plaintiff.

### b. ALJ's failure to make a comprehensive, individualized assessment of Plaintiff's residual functional capacity

Plaintiff asserts that the ALJ failed to adequately assess her mental residual function. Specifically, the ALJ argues that the ALJ's basis for rejecting her treating physicians' opinions is "specious" and amounts to "rank speculation." The ALJ concluded that Plaintiff "is 'mildly' restricted in her activities and daily living; has 'mild' difficulties in maintaining social functioning; has 'moderate' difficulties in maintaining concentration,

persistence or pace; and has had no episodes of decompensation." (T. 20.) The ALJ gave little weight to Dr. Moellentine's opinion because it contained conflicting statements, was not supported by the record as a whole, and appeared to be based primarily on Plaintiff's complaints. The Court concludes, as Magistrate Judge Boylan did, that the ALJ's stated reasons for discounting Dr. Moellentine's opinion are sufficient under the law. *Bently v. Shalala*, 52 F.3d 784, 785-86 (8th Cir. 1995). At the time Dr. Moellentine made the November 3, 2003, assessment of Plaintiff's mental work-related abilities, Plaintiff was breast feeding and not taking any Provigil or Wellbutrin for depression. In November 2003, Dr. Moellentine stated that after Plaintiff weaned her baby off of breast feeding for the next month or two (during which time she could not take medication) he would like to see her back in the office so that he could assess a "return to work schedule," although he did indicate that he would support a short-term disability in the meantime. In other words, the short-term disability was associated with the inability to take medication during a time of breast feeding. Then, in January 2004, Dr. Moellentine sent a letter stating that despite not treating Plaintiff until October 2002, "[t]he period of disability due to the severity of her medical conditions would begin on 7/15/02 with a review of medical improvement after 7/14/2004, giving sufficient time to evaluate Nicole Mekosch's progress." (Tr. 230.) Dr. Moellentine provided no explanation for the change in his opinion.

Given all of the evidence in the record, Plaintiff's activities of daily living, and the responsibilities associated with raising five children, were clearly inconsistent with Dr. Moellentine's opinion that she had severe limitations and functioning. There is

insufficient evidence in the record to establish that Plaintiff required any mental limitations in addition to the semi-skilled work with no high production goals in order to reduce her stress.

It is the Court's view that the ALJ properly evaluated both Plaintiff's physical and mental residual functional capacities and, therefore, in his hypothetical question to the Vocational Expert ("VE") he accurately reflected Plaintiff's functional capacity from both a physical and mental standpoint. It was proper for the ALJ to grant little weight to Dr. Moellentine's assessment describing the limitations and restrictions. Further, the Court finds that the ALJ properly followed the regulations for assessing Plaintiff's mental and functional capacity. The ALJ's residual functional capacity ("RFC") is supported by substantial evidence in the record.

The Court finds that the ALJ determined a proper RFC, posed a proper hypothetical to the VE, and properly relied on the VE's testimony to determine that Plaintiff failed to meet the requirements under the agency for a period of disability.

The Court therefore finds and concludes that the ALJ's determination that Plaintiff failed to meet the requirements for DIB and SSI is supported by substantial evidence in the record.

## CONCLUSION

Based upon the foregoing and upon the independent review of all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

     1.     The Court adopts the Report and Recommendation of Magistrate Judge Arthur J. Boylan (Doc. No. 24) filed on April 12, 2006.

     2.     Plaintiff's Objections to Report and Recommendation (Doc. No. 29) are **DENIED**.

     3.     Plaintiff's Motion for Summary Judgment (Doc. No. 15) is **DENIED**.

     4.     Defendant's Motion for Summary Judgment (Doc. No. 19) is **GRANTED**.

**LET JUDGMENT BE GRANTED ACCORDINGLY.**

Dated: August 7, 2006     s/Donovan W. Frank
     DONOVAN W. FRANK
     Judge of United States District Court